## THE RACINE & MISSISSIPPI RAILROAD COMPANY

*v.*

## THE FARMERS' LOAN & TRUST COMPANY *et al.*

1. CORPORATIONS—*bound by a parol contract made by their authorized agents.* The doctrine is well settled, that a corporation, acting within the scope of its legitimate authority, is bound by a parol contract made by its authorized agent, the same as an individual under like circumstances.

2. STATUTES—*construction of act of February 10th, 1853—incorporating the Rockton & Freeport R. R. Co.—power of the company to consolidate its stock with, and place the same under the control of a corporation of another State.* Under the act of the legislature of February 10th, 1853, incorporating the Rockton & Freeport Railroad Company, said company was authorized, in event it should consolidate its stock with that of a corporation outside of this State, as it was empowered to do, to place the control of the consolidated stock under the control of the board of directors of the foreign company.

3. CORPORATIONS—*effect of a corporation of this State consolidating with one of a foreign State.* The consolidation of the stock of a railroad company created by the laws of Wisconsin, with that of one created by the laws of this State, does not constitute the corporations thus consolidating, one corporation of both States, or of either, but the corporation of each State continues a corporation of the State of its creation, although the same persons as officers and directors, manage and control both corporations as one body.

4. SAME—*a mortgage made by the company created by the consolidation, upon the property of the Illinois corporation—is the deed of the latter—and is valid.* And where, after such consolidation, by legislative act, the name of the Illinois corporation is made the same as that of the Wisconsin corporation, and a mortgage is made in the corporate name by the officers of the company as consolidated, upon the line of railroad of the Illinois corporation, such mortgage is the sole mortgage of the Illinois corporation, and is legal and valid.

5. And where, after the consolidation of these corporations, the corporation thereby created, afterwards, consolidated with another Illinois corporation, the name of which was subsequently changed by legislative act, to the same name as that of the former corporation, and the whole managed by a common board of directors, and a mortgage was made covering the entire road in Illinois, owned by the Illinois corporation : *Held*, that notwithstanding the consolidated contract · with this third corporation may have been illegal, that fact could not affect the validity of the mortgage as to that portion of the property mortgaged, and not owned by such third corporation, at the time of the consolidation.

6. MORTGAGOR—*not permitted to deny his own title.* And in a suit to foreclose such mortgage, the question as to the validity of such consolidation contract cannot be raised by the mortgagor corporation. Having mortgaged the property, it will not be permitted to deny its own title.

7. The purchaser under a decree in such suit, would acquire only such title as the mortgagor corporation had power to mortgage at the time, or as it has been since recognized as having had in such way as to conclude interested parties; as neither such third corporation, nor any of its stockholders, were made parties to such suit, they could not be affected by the decree, and might afterwards assert their right to that portion of the property owned by them **and** included in the mortgage.

8. CORPORATIONS—*of different States—consolidating—effect of mortgage—made by the consolidated company—upon the property of either.* Where corporations, created respectively by the laws of Wisconsin and Illinois, consolidate, but in making the contract of consolidation, they fail to pursue the terms of their charters, and subsequently, by legislative act of this State, such contract is confirmed, the corporate existence of the corporation named in the act is thereby recognized as a corporation of this State, and a mortgage subsequently made in the corporate name of all the corporations, (they being the same in both States, and managed by a common board of directors) upon the property of the corporation of this State, is a valid mortgage of the latter corporation.

9. TRUSTS AND TRUSTEES—*who will be considered as a trustee.* And where a person takes the entire management and control of the corporations so consolidating, managing the same, as one company, for the better security or protection of the mortgagee, such person thereby becomes a trustee, not only for the mortgagee, but also for the mortgagor corporations.

10.  SAME—*trustee—cannot purchase the trust fund.*  And if at a foreclosure sale of the property under a second mortgage, such person, while occupying such relation, becomes the purchaser, he will be required to yield the property to the mortgagor corporation, upon being reimbursed the amount of his bid, with interest thereon.

11.  And such person must also be held to account for the earnings of the property while managed and operated by him, and in a foreclosure suit upon the first mortgage, it was error for the court to decree that the right of the mortgagor corporation, to have such accounting, should depend on the redemption from the sale to such trustee under the second mortgage, within 90 days thereafter, and in default of such redemption, the mortgaged property should be sold to pay the first mortgage.

12.  In such case, the decree should be, that the account be first taken and stated, and a reasonable time should be given for the redemption from the sale under the second mortgage, and for the payment of such balance as should be found due on the first mortgage debt, after deducting the net earnings of the property, and that in default of such redemption and payment being made, the property be sold in satisfaction of said first mortgage debt.

13.  In such accounting, the mortgagor corporation was entitled to a credit, for the earnings of a certain line of railroad, which had been constructed by such trustee, with money furnished by the first mortgagee, and which road had been built along the line of a partially completed railroad belonging to the mortgagor corporation, which by its contiguity rendered the road of the mortgagor less valuable than it otherwise would have been.

14.  The earnings of such other road must be ascertained down to the date of the decree only, as an account of the earnings or amounts to a later period, was waived, as appears by the recitals of the decree.

15.  The circuit court when deciding the motion, when made, to set aside the sale of the mortgaged property under the decree of foreclosure, pending the writ of error in this cause, must treat this modification of its views as a reversal, and upon such motion, proof must be heard, as to whether the property is now held under the master's deed, by *bona fide* purchasers.

16.  And when the circuit court shall have acted upon this question, either party can bring its decision before this court for review, but such question cannot, in the first instance, be brought for decision before this court.

WRIT OF ERROR to the Circuit Court of Stephenson county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

The facts are fully stated in the opinion of the court.

Messrs. KNOWLTON & JAMIESON,for the plaintiffs in error.

Mr. THOMAS J. TURNER, for the defendants in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

On the 17th of April, 1852, the legislature of the State of Wisconsin passed an act incorporating the Racine, Janesville & Mississippi Railroad Company, with power to construct a railway from Racine, on Lake Michigan, to the Mississippi river. The company was duly organized in November, 1852. By an act of the legislature of Wisconsin, approved June 27, 1853, the company was authorized to build a branch road to Beloit, a town on the line between Wisconsin and Illinois, and by another act, approved July 9th, 1853, the company was authorized to connect its road at Beloit with any railroad then chartered or thereafter to be chartered in the State of Illinois, and to consolidate its stock with the stock of such Illinois road, and place the road under a joint board of directors, to be chosen as the consolidating companies should agree.

The legislature of the State of Illinois, by an act approved · February 10th, 1853, incorporated the Rockton & Freeport Railroad Company, with power to build a railroad "from a point on the north line of the county of Winnebago, through the village of Rockton, to Freeport, in Stephenson county." The company was authorized to consolidate its stock with that of any Wisconsin company that had been or might thereafter be incorporated by the legislature of that State, running from the terminus of said road in the direction of Lake Michigan.

On the 23d of February, 1854, these two companies entered into articles of agreement, the object of which was declared, in the concluding article, to be, "to fully merge and consolidate the capital stock, powers, privileges, immunities and franchises of the Rockton & Freeport Railroad Company,

with the Racine, Janesville & Mississippi Railroad Company."

On the 13th of February, 1855, the legislature of Illinois changed the name of the Rockton & Freeport Railroad Company, to "The Racine & Mississippi Railroad Company," and on the 31st of March, of the same year, the legislature of Wisconsin changed the name of the Racine, Janesville & Mississippi Railroad Company, to "The Racine & Mississippi Railroad Company."

We will now state the facts in regard to a third road which ultimately was consolidated with the Racine & Mississippi.

On the 21st of January, 1851, the Savanna Branch Railroad Company was organized under the general railroad law of Illinois, for the purpose of building a road from Savanna, on the Mississippi river, in an easterly direction, to intersect the Galena & Chicago Union Railroad, at a point in Stephenson county, not exceeding 15 miles from the town of Freeport. On the 12th of February, 1851, the legislature passed an act, authorizing the company to build the proposed road, and, for that purpose, to condemn private property, thus recognizing the existence of the corporation. On the 23d of January, 1856, this company entered into articles of agreement with the Racine & Mississippi Railroad Company, by which its stock was consolidated with the latter company, and a majority in interest of the stockholders of the Savanna company, gave their written ratification of the articles. On the 14th of February, 1857, the legislature of Illinois passed an act changing the name of the Savanna Branch Railroad Company, to "The Racine & Mississippi Railroad Company," and confirming and declaring legal and binding the acts of consolidation entered into between the Rockton & Freeport company, and the Racine, Janesville & Mississippi company, and those between the Savanna Branch company and the Racine & Mississippi Company.

Prior to this time, and on the 1st of September, 1855, the Racine & Mississippi Railroad Company had executed and delivered to the Farmers' Loan & Trust Company, a corporation existing in the State of New York, 680 bonds of $1,000 each, payable to said Loan & Trust Company or bearer, and to secure their payment, had executed a mortgage upon so much of their road as was situated in Wisconsin, extending from Racine to Beloit.

Subsequent to the above named act of confirmation, and on the 24th of April, 1857, the Racine & Mississippi Railroad Company executed to the same Farmers' Loan & Trust Company 700 additional bonds of $1,000 each, and on the same day, to secure the payment of said bonds, executed to said Loan & Trust Company a mortgage upon all its road in the State of Illinois, extending from Beloit, on the Wisconsin line, to Savanna, on the Mississippi river. The mortgage recited that the company was engaged in the construction of a railroad from Racine to Beloit, in Wisconsin, and from Beloit to Savanna, in Illinois. These bonds and mortgage bore date June 2d, 1856, but the bonds were not sold, nor the mortgage acknowledged, until April 24th, 1857, after the passage of the confirmatory act. It is to foreclose this mortgage that the present suit is brought.

It should be further stated, the Farmers' Loan & Trust Company, on the 3d of December, 1858, filed their bill in the circuit court of the United States for the district of Wisconsin, against the Racine & Mississippi Railroad Company, to foreclose the mortgage given on that portion of the road situate in Wisconsin, to secure the issue of bonds first above named, and on the 10th day of May, 1859, pending that suit, the railroad company executed to the Loan & Trust company a deed of surrender of the entire road. The road was then fully completed in Wisconsin, and about 20 miles were finished in Illinois. After taking possession, the Loan & Trust company proceeded to complete the road to Freeport, as it was authorized

to do by the deed of surrender, and it was opened for business on the 1st of September, 1859, having remained from that time to the present under the undisputed control of the Loan & Trust company. George A. Thomson, a party in this suit, acted as agent of said Trust company, in the management and control of said road.

After the execution of said deed of surrender, and in pursuance of its terms, a decree of foreclosure was pronounced in the then pending suit, giving the railway company five years from the completion of the road to Freeport, in which to redeem said property, and providing that if no redemption should be made, the court should proceed to make such other and further decree in the premises as might be necessary. No redemption having been effected, on the 31st of March, 1865, the Farmers' Loan & Trust Company filed their petition in said court, setting out in full their disbursements and receipts, and praying a decree of sale. An account was stated by the master in chancery, which was approved by the court, and a decree of sale was pronounced, under which George A. Thomson became the purchaser of the Wisconsin division of the road.

In order to comprehend certain questions arising upon the record, it is necessary to state some further facts.

On the 27th of June, 1857, the Racine & Mississippi Railroad Company executed to Morris K. Jesup and Curtis B. Raymond, 700 bonds for $1,000 each, and to secure their payment, also executed a mortgage upon the entire line of road, from Racine to Savanna. This mortgage was made expressly subject to the above named mortgages to the Loan & Trust Company on the Wisconsin and Illinois divisions of the road. On the 26th of December, 1859, Jesup and Raymond filed a bill in the circuit court of Walworth county, in the State of Wisconsin, to foreclose this mortgage, and the Wisconsin portion of the road was subsequently sold, under a decree rendered in said suit, to said Morris K. Jesup, for $270,000. Jesup

43—49TH ILL.

subsequently conveyed the title thus acquired, to Richard Irvin and George A. Thomson, and Irvin afterwards conveyed to Thomson. On the 2d of December, 1863, Jesup and Raymond filed their bill in the circuit court of the United States, for the northern district of Illinois, to foreclose their mortgage upon that portion of the road situate in Illinois. The court found the sum of $859,362 to be due said Jesup and Raymond, and pronounced a decree of sale, under which the Illinois division of the road was sold and conveyed by the master in chancery to George A. Thomson for $70,000, and the sale was approved by the court.

That portion of the road running from Freeport westward to the Mississippi, was never completed in the name of the Racine & Mississippi Railroad Company, but on the 24th of February, 1859, the legislature of Illinois incorporated the Northern Illinois Railroad Company, with power to build a road from Freeport to the Mississippi. The company was organized in 1860, and George A. Thomson, then managing the Racine & Mississippi road, as agent of the Loan & Trust company, and therefore, under the deed of surrender, occupying a fiduciary relation to the Racine & Mississippi Company, subscribed to all the stock of the Northern Illinois Railroad Company, except $3,800, and became the president. He then proceeded to build the road from Freeport to Savanna, in the name of the Northern Illinois Railroad Company, at no place diverging more than three miles from the track of the Racine & Mississippi Company, and in places occupying its very track, which had been partially graded. This road was built with money obtained from the holders of the bonds of the Racine & Mississippi Company, secured by the mortgages to the Loan & Trust Company.

After the road was completed, it was leased to the Loan & Trust Company, and operated by it, through Thomson as its agent, in connection with the line of the Racine & Mississippi road.

Such are the substantial facts necessary to a comprehension of this case.

To this bill of foreclosure, which was filed in the circuit court of Stephenson county, on the 31st of December, 1864, the Racine & Mississippi Railroad Company filed their answer, and subsequently filed a cross-bill and an amended cross-bill, to which it made George A. Thomson and the Northern Illinois Railroad Company parties. It prayed in the cross-bills, not only for the cancellation of the bonds and mortgage given to the Loan & Trust Company, upon which this suit is brought, and of the sale and deed to Thomson under the foreclosure of the Jesup and Raymond mortgage, but also that the court should decree the Northern Illinois Railroad to have been built in violation of its rights and franchises, by parties occupying a fiduciary relation towards itself, and that an account might be taken with said railway company, and such relief given as the case might require. Answers were filed to the cross-bills, and the original cause and the cross-cause having been brought to issue, and a great amount of proof taken, they came to a hearing, and the court pronounced a decree directing a sale of the road for the amount due upon the bonds, and authorizing the Racine & Mississippi Railway Company to redeem from the sale to Thomson, under the Jesup and Raymond mortgage, by repaying the $70,000 which he had paid the road, and interest thereon, and also directing an account to be taken with the Northern Illinois Railroad Company for the benefit of the Racine & Mississippi Company, provided the latter should first redeem from Thomson by paying the $70,000 and interest, within 90 days from the decree. It was further decreed, that if the Racine & Mississippi Company should fail to redeem within the 90 days, the Northern Illinois company need not come to an account, and the road of the Racine & Mississippi Company should be sold at once in payment of the amount found by the court to be due upon the Loan & Trust Company bonds, but should redemption be made

340        R. & M. R. R. Co. *v.* F. L. & T. Co.        [Sept. T.,

Opinion of the Court.

from Thomson within the 90 days, no sale should take place until the statement of an account by the master with the Northern Illinois Railroad Company, and the net profits earned by said company should apply as a credit on the bonds secured by the mortgage held by the Loan & Trust Company, and produced in this suit.

To reverse this decree, the Racine & Mississippi Railroad Company has prosecuted a writ of error.

It is urged by the counsel for plaintiff in error, that the consolidation contracts above named were void—that they were not aided by the confirmatory act of the legislature, and that, therefore, the corporation known as the Racine & Mississippi Railroad Company is merely a Wisconsin corporation, and has had no legal existence in Illinois. It is urged that this mortgage is merely a mortgage made by a Wisconsin corporation upon property in Illinois, to which it has no title, and over which it can rightfully exercise no control. It is further urged, that, even if the contracts of consolidation were not void, and if the Racine & Mississippi Railroad Company had a legal existence in Illinois, nevertheless, it had no power to make this mortgage. These objections we will consider.

It is first insisted that the contract between the Rockton & Freeport Railroad Company and the Racine, Janesville & Mississippi Railroad Company was void, because not under the corporate seal; but the ancient doctrine of the common law, that a corporation could speak and act only by its corporate seal, has long since been exploded, and it is now too well settled, in this country, to need any citation of authorities, that a corporation, acting within the scope of its legitimate authority, is as much bound by a parol contract made by its authorized agent, as a natural person would be under like circumstances. 2 Kent, 288. In this case, the Rockton & Freeport Company, by a resolution of its board of directors, had expressly authorized this contract to be made, and it was subsequently carried into complete execution by both

companies, and thus ratified as completely as ratification could be made.

It is further urged, that the Rockton Company was authorized, by its charter, to consolidate its stock only on condition that the consolidated stock should be placed under the control of the board of directors of the Rockton company, whereas, by the contract actually made, the control was given to the directors of the Wisconsin company. The Rockton and Freeport company did not thus construe its charter, for, in the third article of the contract in which the control is given to the Wisconsin board, reference is especially made to the 10th section of the charter as giving authority so to do; and on reference to that section, we are of opinion the company was correct in its construction. That section is as follows:

"Section 10.   It shall be lawful for the said company to unite with any other railroad company which may have been, or may hereafter be, incorporated by the state of Wisconsin, and running from the terminus of said road in a direction towards Lake Michigan, and to grant to such company the right to construct and use all or any portion of the road hereby authorized to be constructed; also the right to purchase or lease, all or any part of said road; also the right to sell, lease or convey the same to said company, or consolidate its stock therewith, and place the management and control of the same under said board of directors, upon such terms as may be mutually agreed upon between the said railroad companies."

It will be perceived that this entire section is very awkwardly worded, but we are of opinion the company was correct in construing the concluding paragraph as designed to authorize it to place the management of its stock under the board of directors of the Wisconsin company, with which it might consolidate, if it should think proper so to do.   The phrase, "*said* board of directors," is improperly used, as no board

342    R. & M. R. R. Co. *v.* F. L. & T. Co.    [Sept. T.,

Opinion of the Court.

had been mentioned, but we construe it as referring to the Wisconsin company mentioned in the same clause of the sentence.

These are all the objections to the contract between the Rockton and Wisconsin companies, we deem it necessary to notice.

The contract of consolidation between the Savanna Branch Railroad Company and the Racine & Mississippi Company, was made under the authority of the general law in regard to the consolidation of the stock of railway companies, approved February 28, 1854. That act authorizes companies in this State, where roads intersect by continuous lines, to consolidate their stock, and also to consolidate with companies out of the State, when their lines should connect.

It is objected by counsel for plaintiff in error, that this contract of consolidation was made between the Savanna Branch Company on the one side, and the Racine & Mississippi Railroad Company on the other, by a contract which describes the latter company as "a corporation existing under an act of the legislature of the State of Wisconsin," and that the lines of the two companies did not connect, and therefore they could not consolidate. But "*falsa demonstratio non nocet.*" It must be remembered, that prior to this date, the legislature of Illinois, acting upon the consolidation contract between the Rockton & Freeport Company and the Racine, Janesville & Mississippi Company, had changed the name of the former to the Racine & Mississippi Company, and the legislature of Wisconsin had done the like for the latter company. The stock of the two companies had been consolidated under a common board of directors, and with a common name, and it was with this board of directors that the contract of the Savanna Branch Company was made. It is wholly immaterial that the contract described the Racine & Mississippi Railroad Company as a corporation existing under the law of Wisconsin. It existed equally under the laws of Illinois, and

the board of directors who made the contract of consolidation, represented, in so doing, a corporation deriving its existence from the laws of Illinois, as well as one deriving its existence from the laws of Wisconsin. It is immaterial that the contract gave only a partial description of the source of their authority, and it is idle to claim that they intended to contract only for the Wisconsin corporation. A separate consolidation with the stock of the Wisconsin company was impossible, because the stock of that company had already been consolidated with that of the Illinois company of the same name. It was with the consolidated stock of these two companies that the stock of the Savanna road was intended to be consolidated by this contract, and this intent was, in fact, carried into execution.

But it may be said, even if the contract with the Savanna company should be considered as having been made as much with the Racine & Mississippi company of Illinois, as with the Racine & Mississippi company of Wisconsin, it was illegally made, because of a non-compliance with the requirements of the statute, pointing out the mode by which Illinois companies may consolidate with each other.

We do not propose to discuss this question, for it is clear, so far as concerns the right of the Loan and Trust company to a foreclosure of its mortgage, it is wholly immaterial whether this contract with the Savanna company was executed in compliance with the requirements of the statute or not. We have already stated there was in existence, when this mortgage was made, an Illinois corporation under the name of the Racine & Mississippi Railroad Company, and we have held this corporation to have been legally constituted, by the contract between the Freeport & Rockton company with the Wisconsin company, and by the subsequent act of the legislature, changing the name of the old corporation to that of the new. The existence of this corporation was wholly independent of all contracts with the Savanna company. With

this corporation the stock of the Savanna company was sub-
sequently consolidated, as a matter of fact, and this mortgage
was made, covering the entire road.   Now, suppose this con-
solidation to have been illegal.   That surely would not affect
the validity of the mortgage as to so much of the road as the
Racine & Mississippi company rightfully owned.   Its mort-
gage would certainly be good to the extent of its own road,
from Beloit to Freeport, and whether it created a valid lien
over the road from Freeport to Savanna, is a question which
the courts must be prepared to decide whenever called upon
by the original owner of said road, the Savanna Branch com-
pany, or by any stockholder therein, but which certainly, in
this proceeding, is a question which the Racine & Mississippi
Railroad Company can not raise.   Whether it had an interest
in the road from Freeport to Savanna, subject to mortgage or
not, it assumed to have, and made a mortgage upon it, and
whatever interest it had, the mortgagee is entitled to have
sold.   If the contract of consolidation with the Savanna com-
pany was defective in the beginning, and if the defects have
not since been cured, that company, or its stockholders, may
assert their right to said road, whenever they shall think
proper, and they will not be prejudiced by the decree in the
present case, because neither that original company as a cor-
poration, nor its individual members, are parties to this suit.
All that the purchaser under a decree in this suit will acquire
at the sale, will be such title as the Racine & Mississippi com-
pany had power to mortgage at the time, or as it has been
since recognized as having had in such way as to conclude
interested parties.   But the Racine & Mississippi company
cannot be permitted to set up, as a defense to a bill of fore-
closure, that it had no title to the property which it has itself
mortgaged.   In such a proceeding the mortgagor is not per-
mitted to deny his own title.   *Barbour* v. *Haines*, 15 Wend.
618; *Dew* v. *Van Ness*, 5 Halstead, 102.

It may also be remarked, that the argument of counsel for plaintiff in error, that the consolidation contract with the Savanna company was illegally made, is wholly inconsistent with the claim made in the cross-bill, and upon which relief was granted in the decree, that the building of the road from Freeport to Savanna, by the Northern Illinois company, was a violation of the rights of the Racine & Mississippi Company. The latter company had no rights west of Freeport, except as they were acquired by a consolidation with the Savanna company. Practically, it would seem to be for the interest of the Racine & Mississippi company to have the contract with the Savanna company pronounced valid, and its right to an account against the Northern Illinois company thus established, since it has itself never built the road westward from Freeport, and there is nothing to be sold in any event, upon the line of the road between Freeport and Savanna, under a foreclosure decree, except a naked and probably worthless franchise.

But there is another view of this branch of the case, similar in principle to that just presented, but assuming that both contracts of consolidation were void, which we deem too important to pass over in silence. As already stated, the legislature subsequently confirmed both contracts, and changed the name of the Savanna company to the Racine & Mississippi Railroad Company, as it had already changed that of the Rockton company. We shall not now stop to consider to what extent the legislature can cure defects in the contracts of corporations. It is sufficient for the present purpose that the legislature, by this act, recognized the Racine & Mississippi Railroad Company as an Illinois corporation created by the merger or consolidation of what had been the Rockton & Freeport company with the Savanna Branch company. Even, then, if both contracts of consolidation had been beyond the power of these companies to make, yet those contracts, and their practical execution by the companies, united to the

44—49TH ILL.

confirmatory act of the legislature, gave to the Racine & Mississippi Railway Company at least a colorable legal existence as an Illinois corporation. That it was a corporation *de facto*, can not be denied, as the stock of the old companies had been exchanged for the consolidated stock of the Racine & Mississippi company, and this company was in full possession and control of the road, and proceeding in its construction without a whisper, so far as appears, either on the part of any member of the original corporations, or of any other person, that it was not the rightful owner.

In this condition of affairs, this company, having a corporate name which the legislature had given it, claiming to be a legal corporation, and having, even if the articles of consolidation had been illegal, at least a colorable right to make such claim, controlling and building a railway as an organized corporation, and asserting the right to condemn land for its corporate purposes, issues its bonds to the amount of seven hundred thousand dollars, and sends them on the markets of the world. To secure their payment it issues a mortgage upon the road it claims to own, and is engaged in building, and, in both bonds and mortgage, describes itself as a corporation existing under the laws of Wisconsin and Illinois. The bonds go into circulation, and the money which has been received for them passes into the treasury of the company, and is expended upon the construction of the road. In process of time, the coupons upon the bonds are left unpaid, and the holders come and demand their money. To this demand the company replies that, although it issued the bonds and mortgage as a corporation, and thus procured the money, yet it was not a legally constituted corporation, and therefore will not pay the money, but will retain the road.

The doctrine of equitable estoppel has so often been expounded by the courts that it needs neither definition nor the citation of authority. In our judgment a clearer case than this for its application has rarely arisen. We are not

saying that a corporation is estopped by its bonds and mortgage from raising the question as to whether, in making them, it was acting within its chartered powers. The question whether the mortgage now under consideration was within the power of the company to make, we shall presently consider. But we do say, that where a company has issued its bonds and mortgage under the circumstances above detailed, the courts of every civilized country must hold it estopped from denying its own corporate existence, for such a defense is repugnant to every sentiment of justice and good faith. That this doctrine of equitable estoppel, or estoppel *in pais*, by which a person who has represented to another the existence of a certain state of facts, and thereby induced him to act on the faith of their existence, is concluded from averring against such person and to his injury that such representations were false, is as applicable to corporations as to natural persons, will hardly be denied. *Hall* v. *Mut. Fire Ins. Co.*, 32 N. H. 297, and *Zabriski* v. *Columbus and Cin. R. R. Co.*, 23 Howard, 391.

The views we have here set forth are in harmony with those expressed by us in the case of *Mitchell* v. *Deeds, post.* p. 416, in which the validity of certain notes given to this same corporation was under consideration. We there held that irregularities in the consolidation, the stock having been in fact consolidated, could not be set up as a defense in a suit brought upon notes given to the Racine & Mississippi Railroad Company, and we might have contented ourselves with a mere reference to that case, in regard to some of these questions, if counsel had not pressed upon us so earnestly a reconsideration of the views there expressed.

It is urged, however, by counsel for plaintiff in error, that admitting the corporate existence of the plaintiff in error under the contracts of consolidation, and as an Illinois corporation, this mortgage was nevertheless illegal, because the Rockton and Freeport company, by its original charter, was

authorized to borrow money only to the amount of $225,000, which was the amount of its stock, and the Savanna company, it is insisted, was not authorized to make a mortgage at all, as it was incorporated under the general law, which gave no authority to mortgage. But this implied prohibition upon the . power of the Rockton & Freeport company certainly had no application to the Racine & Mississippi company, which grew out of the consolidation with the Wisconsin company, as is evident from the third section of the general law in regard to consolidation. Gross' Digest, 532. The power to make the mortgage under this statute, taken in connection with the 3d section of the act of February 12th, 1855, entitled "An act to enable railroad companies to enter into operative contracts and to borrow money," Gross' Digest, 548, we regard as so clear that it is only necessary to refer to these laws.

We have thus far in this opinion treated the mortgage in question as made by the Racine & Mississippi Company of Illinois, while the counsel for plaintiff in error treats it as made by the Racine & Mississippi Railroad Company of Wisconsin, and this error, as we consider it, pervades the whole of his argument in regard to the validity of the mortgage.

Our view of the effect of the consolidation contract between the Rockton company and the Wisconsin company, which we hold to have been legally made, is briefly this. While it created a community of stock and of interest between the two companies, it did not convert them into one company, in the same way, and to the same degree, that might follow a consolidation of two companies within the same State. Neither Illinois nor Wisconsin, in authorizing the consolidation, can have intended to abandon all jurisdiction over its own corporation created by itself. Indeed, neither State could take jurisdiction over the property or proceedings of the corporation beyond its own limits, and, as said by the court in *The O. & M. R. R. Co.* v. *Wheeler*, 1 Black, 297, a corporation "can have no existence beyond the limits of the State or sovereignty

which brings it into life and endows it with its faculties and powers." In the same case the court say that a corporation cannot be created by the co-operating legislation of two States so as to be the same legal entity in both States, and where two States have each created a corporation with the same name, for the same purposes, and composed of the same natural persons, it must nevertheless be considered as a distinct corporation in each State. See also *Farnum* v. *Blackstone Canal Corporation*, 1 Sumner, 47.

The counsel for plaintiff in error urges upon us the authority of this case, but draws from it the mistaken inference, as we regard it, that even if the contract of consolidation between the Rockton company and the Wisconsin company was legally made, nevertheless "each retained its former existence, identity, rights, franchises, powers and privileges." If such had been the fact, the consolidation would have been practically a nullity. But the contract of consolidation, and the subsequent legislation, created substantially a new corporation with a new name, but such corporation, in a legal point of view, was and has remained a distinct corporation in each State, though the two have a common name, common stock, and a common board of directors. There is a Wisconsin corporation under the name of The Racine & Mississippi Railroad Company, and there is an Illinois corporation of the same name, and the original corporations in each State have been transmuted into these.

We have remarked, that counsel for plaintiff in error insist the mortgage in question should be regarded as solely the mortgage of the Wisconsin corporation, and is, therefore, void. But why should it be so regarded? As there was a Racine & Mississippi Railroad Company in each State, and both companies had a common board of directors, a common seal, and consolidated stock, when we find a mortgage executed in this corporate name, by authority of the board of directors, and conveying only the property of the Illinois corporation, can

we have any doubt in what capacity the board of directors were intending to act? Would it not be the veriest trifling with good faith and the rights of creditors, to permit such board to say they were acting in behalf of the Wisconsin corporation, and therefore their act was null? It would be a melancholy administration of justice that would suffer such a defense. In describing the mortgaging party as a corporation existing under the laws of Wisconsin and Illinois, the scrivener who drew the mortgage fell into the very natural error of supposing that there was one corporation for both States, but this did not vitiate the mortgage. We must look at the intent of the parties, and about that there can be no doubt. The mortgage covers the road in the State of Illinois, belonging to the Racine & Mississippi Railroad Company, a corporation of this State. It is executed by the authority of the board of directors of that company, and bears its corporate seal. Does the fact that there is an allied company in Wisconsin, with the same name, seal and directors, throw any reasonable doubt upon the transaction?

From what we have said, it will be seen, we hold there is no error in that part of the decree which recognizes this mortgage as a valid lien.

The counsel for the plaintiff in error further insist, that the court should have set aside the sale under the Jesup and Raymond mortgage, without requiring it to pay the $70,000 which the purchaser, Thomson, paid at the sale, and interest thereon. But in requiring this payment, the court committed no error. The court held Thomson to occupy such a fiduciary relation to the plaintiff in error, that he could not purchase and hold the road against the will of the company. But the rule in such cases is, that the party claiming the benefit of the purchase must refund to the purchaser his outlay. Hill on Trustees, p. 539, and cases cited in notes.

As to the charge of fraud in the decree in favor of Jesup and Raymond, the proof of a fraudulent agreement, and of

Thomson's complicity therein, is so vague and unsatisfactory as to furnish no ground for holding the sale a nullity. It is urged that nothing was, in fact, due on that mortgage, but that question was settled by the decree of the federal court.

It is, however, insisted by the counsel for plaintiff in error, that the circuit court of the United States, for the northern district of Illinois, in which the decree was rendered, had no jurisdiction, as the complainants, Jesup and Raymond, were not citizens of Illinois, and it is urged the defendant was a corporation of Wisconsin. What we have already said, disposes of this question. That mortgage, it is true, unlike the one under consideration, covered both the Wisconsin road and the Illinois road. But it was the same, in legal effect, as if by the contract of consolidation a separate board of directors and a separate organization had been retained for each road, and the proper officers of both roads had united in the execution of the mortgage, under the corporate seal of each company. No one would question the validity of such a mortgage, and this is the same thing in substance. Both roads are mortgaged by authority of a board of directors which acts for each road, and the mortgage is the joint instrument of both the Wisconsin and Illinois companies. When the mortgagees sought to enforce their lien against the Wisconsin road, they proceeded in the courts of that State against the Racine & Mississippi company as a corporation of Wisconsin, and when they enforced it against the Illinois road, they proceeded in the federal court of this district against the Racine & Mississippi company of Illinois.

In dismissing this question of consolidation, it may be remarked, that where continuous lines of road, passing through different States, are consolidated by legislative authority, as we believe is not unfrequently the case, although the consolidated company must, from the very nature of a corporation, be regarded as a distinct entity in each State, yet the objects of consolidation would be very liable to be defeated, unless the

entire line should be placed under one board of directors. The principle that a single corporation cannot be created by the joint legislation of two States, while an irresistible inference from the established law in regard to corporate bodies, is nevertheless a technical and abstract principle, and when adjoining States authorize consolidations, as in the present instance, and the consolidated lines are placed under a common board, with a common name and seal, such board will, naturally, act as if the consolidated lines made but one company, and when their contracts assume that form, the courts must, for the protection of the public, and to enforce good faith, hold, as we have done in this case, that the contract is to be construed as made by the corporation of each State in which the subject matter of the corporation lies; *ut res magis valeat quam pereat.*

It is also insisted, that the plaintiff in error, being in possession under the deed of surrender, could not maintain a bill for foreclosure and sale. No authority is cited for this position, and in our opinion there is no good reason for such a rule.

There is, however, one error assigned, for which the cause must be remanded. We have already stated the circuit court found that the Northern Illinois Railroad had been built by Thomson, with money furnished for that purpose by these bondholders, while he and they occupied a trust relation to plaintiff in error, and that this was done in violation of the trust, and to the injury of plaintiff in error. The court thereupon decreed that the plaintiff in error was entitled to a credit upon its bonds for the net profits of this road, and directed that an account be stated by the master, provided the plaintiff in error redeemed from the sale to Thomson, under the second mortgage, within 90 days, but that no account should be taken in case the redemption was not made.

The directions in the decree, as to the mode in which the account should be stated, were consented to by counsel for

plaintiff in error, in open court, as appears by the face of the decree, and we have not, therefore, examined the questions made upon that portion of the decree.   But there was no consent that the taking of the account should be made to depend on redemption from the sale to Thomson within 90 days, and in this provision of the decree we think there was error. Counsel for defendant in error seek to justify it, on the ground that the sale and deed to Thomson, cut off all the rights of the railroad company, unless it redeems.   But such sale and deed did not affect its rights as to the profits of the Northern Illinois company, which accrued prior to the deed from the master to Thomson, and the violation of the trust having been found by the court, the right to a credit for this portion of the profits would be wholly independent of redemption.

But we think further, in regard to the profits which have accrued since the deed to Thomson, admitting the railway company would have no right to them if it should not redeem, it was unreasonable, in view of the relation which Thomson sustains to the different parties to this record, that it should be required to redeem in the dark, by paying to Thomson a large sum of money before being permitted to know how much it must pay the Loan & Trust company, in order to make its first redemption effectual, and save the road.   There would have been no hardship to Thomson in having the account taken before the time for redemption should expire, except a little delay, of which he has no right to complain, in view of the position he occupies.   But for the consent given to that portion of the decree directing the application of the net profits, it would be a question whether they should not first be applied to the payment of the amount due Thomson.   That part of the decree, however, is not before us.

The court should have directed the account to be taken to the time when Thomson obtained his title, and from that date to the taking of the account.   The profits during the first period should have been applied as directed in the decree,

45—49TH ILL.

independently of redemption from the sale to Thomson, and those of the second should be made to depend upon redemption, but a reasonable time should be given to redeem, after their ascertainment.

The cause will be remanded, with directions to the court to modify its former decree, in conformity with this opinion.

The costs of this court will be taxed against the defendants in error.

*Decree modified.*

Subsequent to the filing of the foregoing opinion, further action was had in the case, as indicated in the following additional opinion:

PER CURIAM: Since the foregoing opinion was filed, the counsel for plaintiff in error have presented a further record, showing that the road has been sold, under the decree of the circuit court rendered herein, and he asks this court to direct the circuit court to set such sale aside. This is resisted by the counsel for the defendants in error, and affidavits are filed for the purpose of showing that the road has passed into the hands of innocent purchasers, for a valuable consideration.

It is apparent, that this question cannot be brought before us in this method. The motion must be made and decided in the circuit court, where the evidence can be heard, and when that court shall have acted, either party can bring its decision before this court for review.

It is, however, proper to say, that although in our opinion already filed, we have modified and not wholly reversed the decision of the circuit court, yet that modification is of such a character, that for the purpose of deciding this motion, when

it shall be made, the circuit court should consider the decree as having been reversed.

The counsel for defendants in error has, on their part, moved for an amendment in the last paragraph but one of the opinion.  As it now stands, the court is directed to take the account against the Northern Illinois Railroad Company, to the time when Thomson obtained his title, and from that date to the time of taking the account.  But our attention is now called to the fact, that the decree shows the parties consented the account should be taken only to the date of the decree, and this is not denied by the counsel for plaintiff in error. The circuit court will, therefore, take the account as against the Northern Illinois Railroad Company only to that date.

It is urged, however, in behalf of the defendants in error, that the account against the Farmers' Loan & Trust Company, in regard to the profits of the other portion of the road operated by said company, which account was brought down to the date of the rendition of the decree, should now be brought forward to the time when a new decree shall be rendered. On the other hand, it is claimed that such new accounting should not be required until the plaintiff in error has redeemed from the sale to Thomson, and that in no event should it be brought down to a later date than the date of the master's deed, made under the decree and sale in this case.  We are of opinion the plaintiff in error has a right to have the account stated before effecting a redemption from Thomson, and whether it shall be brought down to the time of stating the account, or shall stop at the date of the master's deed under this decree, will of course depend upon whether the court shall set said sale and deed aside.