JOHN ACRES v. ELIZA MOYNE ET AL.

(Case No. 4878.)

1. WRIT OF ERROR.— The doctrine announced in Stephenson v. T. & P. R'y Co., 42 Tex., 163, to the effect that the supreme court. with a view to determine its own jurisdiction, would inquire into the facts bearing on a succession and merger of two railroad companies, approved, with citation of authorities to be found in the opinion.

2. RAILWAY COMPANIES.— The purchasers of a sold-out railway corporation succeed to all its rights, powers and privileges, and may continue business in its name. No change of name is required; there need be no notice given of the purchase and merger; nor in its future dealing with strangers is it compelled to show by what special action or authority it claims succession.

3. SAME — EVIDENCE.— If, by special act of the legislature, the name of the corporation is changed, one suing in trespass to try title for land conveyed to him by the new company under its new name, and which was patented to the old sold-out company in its old name, may introduce such special act in evidence, to show the identity of the corporations. The preamble of such an act, like that of any other act, general or special, is only competent to show that the legislature, in passing the act, took into consideration the matters recited in the preamble.

APPEAL from Clay. Tried below before the Hon. B. F. Williams.

Suit against appellees in the nature of a suit in trespass to try title to six hundred and forty acres of land, and for damages. Plaintiff and appellant also sued out a writ of sequestration for the premises, by virtue of which appellees were ejected from the premises.

Appellees answered by general denial, plea of not guilty, suggested improvements by Wm. Moyne, deceased, during his life-time, made in good faith, and pleaded in reconvention for damages caused by their being ejected under appellant's writ of sequestration, and for the rents, fruits and revenues of the premises. The administrators and the other appellees filed separate answers setting up in substance the same defense; the latter claiming homestead and exemption rights under Wm. Moyne, deceased.

Verdict for defendants, with a finding of damages to the amount of $850. Judgment was rendered in favor of appellees for that amount, and a writ of restitution awarded.

Appellant, claiming the land· in controversy as assignee of the G., H. & S. A. R. R. Co., offered in evidence a patent dated May 30, 1877, by virtue of a certificate issued to the B. B., B. & C. R. R. Co. in Texas, in 1860, which patent was issued to the B. B., B. & C. R. R. Co. for the land in controversy. He then offered in evidence as a muniment of title, and for the purpose of proving a transfer from the B. B., B. & C. R. R. Co. to the G., H. & S. A. R'y Co., or to prove that the name of the former company was changed to that of the latter, the special acts of the legislature of Texas, passed July 27, 1870, to the introduction of which appellees objected, for the reason that the act was not admissible to prove a transfer of the certificate, by virtue of which the land in controversy passed from one company to another, or that they were one and the same company, and because that act did not purport to convey property from one company to another; which objection was overruled and the act admitted.

Afterwards appellees renewed their objections to the special act, and moved the court to withdraw it as evidence from the jury, which motion was granted.

The special act of the legislature recited in its preamble the facts that in 1868 and 1870 the road-bed, track and branches, and chartered rights and privileges of the B. B., B. & C. R. R. Co., were sold under execution and deed of trust, all of which appears of record; and that the purchasers at said sales, and their associates, had formed a new company under said old name, and that they desired to be distinguished by name from said sold-out company, etc.; and after some further preamble, it was enacted that the new company's name should be changed to that₄ of the G., H. & S. A. R. R. Co. See first section of said act.

*L. C. Barrett*, for appellant.

*A. K. Swan*, for appellees.

WEST, ASSOCIATE JUSTICE.— In Stephenson *v.* Texas & Pacific R. W. Co., 42 Tex., 163, it was held that the defendant in error in that case, which was by purchase and otherwise the successor of the Southern Pacific R. R. Co., whose existence was merged in that of the Texas & Pacific R. R. Co., was a proper sole party defendant in a·

proceeding by writ of error to bring in review before this court the correctness of a judgment rendered in favor of the Southern Pacific R. R. Co., whose purchaser and successor it had become. This court in that case, with a view to determine its own jurisdiction (Const., art. V, sec. 3), inquired into the facts of the succession and merger of the two companies, and held that the writ of error would lie against the Texas & Pacific R. R. Co. as the successor of the Southern Pacific R. R. Co. In support of that view, the court in that case cited the following authorities: Paine v. Lake Erie & Louisville R. R. Co., 31 Ind., 283; The Indianapolis, Cincinnati & La Fayette R. R. Co. v. Jones, 29 Ind., 465; Racine & Miss. R. R. Co. v. The Farmers' Loan & Trust Co., 49 Ill., 331; Ohio & Miss. R. R. Co. v. Wheeler, 1 Black, 286; Commonwealth v. Atlantic & Gt. West. R. R. Co., 53 Pa. St., 9; 21 Ill., 451; 25 Ill., 353; Philadelphia, etc., R. R. Co. v. Howard, 13 How., 309; Mosier v. Hilton, 15 Barb., 657. See, also, Redfield on Railways, vol. 2, ch. 38, "On the consolidation of railroad companies."

In that case (42 Tex., 163), this court held that while the facts before it do not disclose the exact terms and conditions under which the merger or consolidation of the two corporations was effected, yet from the provisions of the general railroad law of the state on the subject, as well as to the special acts of the legislature as to these corporations that were introduced in evidence before them, they are authorized to draw the conclusion that the Texas & Pacific Railroad Co. had as a matter of fact succeeded to the charter, privileges and rights of the Southern Pacific Railroad Co., and hence a citation in error served on them was sufficient to give the court jurisdiction to revise a judgment rendered in favor of its predecessor.

In the present case, we are of opinion that the district court erred in finally excluding from the consideration of the jury the appellant's chain of title to the land in suit, derived through the B. B., B. & C. R. R. Co., and the Gal., Har. & S. A. R. R. Co., as its successor.

The general laws of the state provide, when a railroad corporation is sold out, that the purchasers succeed to all the rights, powers, etc., etc., of the sold-out corporation, and such purchasers can still continue to exist and do business as a corporate body under the name of the sold-out company. Pasch. Dig., vol. 1, art. 4912; R. S., art. 4260. They can proceed, after such purchase, to transact business, as fully as the sold-out corporation could do before that event. No change of name is required by the general law on the subject. No notice or publication of the purchase or merger is necessary;

nor is there any more reason for such notice than there is that the public at large should know the various changes annually made in the *personnel* of a corporation by the transfer in the course of business of its stock to strangers, or the changes made by death or affected by the withdrawal of an old, or the issue of a new, series of stock certificates, or any like official action of the corporation.

The new company, by operation of the general laws of the state, becomes the successor of the sold-out corporation, and occupies to the public, in the future, the same relation the sold-out company did in the past. As to the creditors and the general liabilities of the old company, for that the general law makes special provision. Pasch. Dig., vol. 1, art. 4916; R. S., art. 4264.

In its future dealings with strangers, the new organization is not compelled, on every occasion, to show by what special action or authority it has succeeded to the rights of the old company. The court, by virtue of the general laws of the state on the subject, takes judicial cognizance of the legal effect in general of such sale and purchase upon the *status* of the sold-out company and of its purchasers, without inquiring into the character or nature of the purchase or transfer. Hence, in the present case, had not the purchasers of the sold-out company deemed it best to change the name of the corporation, there would have been no necessity for the purchaser of the land to have proceeded further, in developing his right of action, than to have exhibited a legal title to the land in suit in the corporation by name, and a conveyance from such corporation, or from the lawful and recognized successor of such sold-out corporation by its original name to himself. All the particulars of that purchase and succession, the minute details of it, and the legal consequences flowing from it, and the facts as to whether such purchase was made under execution or at a trustee's sale, or by order of court, or all the particulars as to what exact property was acquired by the purchase, are matters not in issue in this case.

It would be sufficient, in order to enable a purchaser from such corporation to maintain an action of trespass to try title, to show title to the *locus in quo* in the original corporation, and to prove that he held by deed from that corporation, or its lawful successor or assigns, and produce a grant to them from the government, and a deed from such corporation to himself vesting in him the fee.

From this exhibition of title the court would presume that the land certificate on which the patent in question is based passed by the purchase to the new company, who retained and had the right, in their dealings to use the name of the sold-out company. The

fact that there had been, ten years before the date of the suit, a sale of the entire road-bed, rolling-stock, franchises and charter rights of the company, coupled with the production by the purchaser of the patent, and a conveyance to him from the new company of the land granted and described in it, would be strong proof that the land certificate in question had long before passed into the possession of the new company, and had become their property. If it is sought to resist a recovery by one in possession against such a title, then it becomes the duty of the person so resisting, by way of defense, to show the secret vice or defect in the title which is not apparent on its face.

Let it be shown, for instance, that the corporation had previously parted with its title to some one else, or that in some other legal mode the title of the purchaser from the corporation was defective. There was no effort made to establish any such defense. And as the patent issued to the original corporation as late as 1877, many years after the change of ownership, and is found in the possession of the new company, the presumption of ownership in the new company becomes very strong. The patent inures to their benefit, and a purchaser from them obtains a legal title to the land so purchased, that would be good against any one who could not by evidence disclose a right superior to that acquired by the purchase.

In this case, but for the fact that the purchasers of the sold-out corporation, by authority of a special act of the legislature, had changed the name of the sold-out company, the apparent legal title of appellant to the land in question would have been complete upon its face, upon his simply showing a patent from the state to the original corporation and a deed from such corporation to himself, as would have been done by the evidence in this case but for the subsequent change in the name of the company.

As, however, the name of the corporation had been changed by a special act of the legislature, it became necessary to produce such act for the purpose of identifying the corporation. The sole object of its production was to show that the new corporation, under whom the appellant held, was, in fact, the same as the one to whom the patent to the land in suit had issued. For that purpose, the special act of the legislature of the date of 27th of July, 1870, was proper evidence.

The preamble to that act, like the preamble to any other act of the legislature, general or special, is only competent to show that the legislature, in passing the law in question, took into consideration the matters recited in the preamble. Sedgwick on Statutory Con-

struction, p. 42 (Pomeroy's ed.). It furnishes no proof of the existence of the facts therein recited, and it is so expressly declared in the twelfth section of the special act under consideration.

When that act was introduced in evidence, and the identity of the corporation conveying to the appellant with the company to whom the land was granted by the state was established, the appellant showed a good legal title in himself to the land in suit.

If there were really matters growing out of the dealings of the purchasers of the sold-out corporation with its affairs or with its creditors, or with others, that vitiated the title conveyed by such purchasers and successors in the hands of the appellant, they were matters of defense and should have been made the subject of proof by the parties relying on them to defeat the legal title. The court, then, erred, under the circumstances, in excluding the title of the appellant.

There are other matters in the record which would seem to indicate that, even if the appellant's title was not perfect, that the appellees did not sustain such an attitude to the case as would enable them to take advantage of its defects. As, however, the relation of the respective parties to each other, under the admitted facts in the case, in reference to the possession of the land, have not been discussed by either party, we refrain from expressing any opinion whatever upon that branch of the case.

Ella Moyne appears to be a minor. The case seems to have proceeded, as to her, without the appointment of a guardian *ad litem*. On the reversal of the cause a guardian *ad litem* should be appointed for this minor, so that her rights can be protected and she be bound by the judgment of the court.

REVERSED AND REMANDED.

[Opinion delivered June 12, 1883.]