### HOUSTON EAST & WEST TEXAS RAILWAY COMPANY v. THEODORE KELLER.

### No. 706.

1. **Petition Showing No Cause of Action.**—Three judgments were recovered against a railway company, foreclosing liens on all the property and franchise of the company, which was then in the hands of receivers. The judgments directed that the property be sold to pay said debts and others of their class, and gave them a preference lien. The sale was made, and the property bought by J., who assigned his bid to the Union Trust Company. The sale and assignment of bid were reported to the court and confirmed, and deed made to the Union Trust Company, which conveyed it to the reorganized railway company. All the defendants knew that the plaintiff's judgments were unpaid, and were charges on the property sold. In a suit upon the judgments against the reorganized railway company, the trust company, and J., a petition setting up the above facts was held to show no cause of action.

2. **Same—Effect of Sale.**—When the sale was made the lien was discharged, and the rights of the lienholders thereafter was to have satisfaction of their debts out of the fund thus created. The petition does not show that the purchase money was not paid in, nor does it show any other fact by which J. or his assigns became liable to plaintiff for his claim.

3. **Reorganization Proceedings—Liability of New Company.**—Prior to the foreclosure judgment, plaintiff and other lien creditors of the road agreed with J. to accept first mortgage bonds of the reorganized road in satisfaction of their claims, provided they were delivered within six months from date of foreclosure sale; and to that end they assigned their claims to a trustee to be delivered to J. in exchange for the bonds. By the decree of foreclosure it was provided that the franchise, etc., should not be sold for less than $1,200,000, and that of this sum at least $375,000 should be paid in cash to cover the lien debts; but it was further provided, that lien debts might be received as cash in payment of the bid of the purchaser. The franchise, etc., were sold and purchased by J., and having procured from the trustee plaintiff's lien judgments, he used them as cash in payment of his bid. Sale was made August 2, 1892; it was confirmed October 25, 1892. April 26, 1893, the commissioner reported that J. had complied with the terms of sale, stating the use made by him of the judgments. May 5, 1893, the report was approved and deed made to the trust company, and it conveyed to the reorganized railway company. Bonds were tendered plaintiff for his debt in June, 1893, but he refused them, because not tendered within six months after foreclosure sale. These facts rendered the reorganized company liable to the plaintiff for his debt.

4. **Same.**—It sufficiently appears that those who reorganized the company were represented by J., and that his acts were done for their benefit, and that the reorganized company has taken the property under the arrangements made by him, and received the benefits of it, and it is chargeable with any liability assumed by J. in his dealings with plaintiff's judgment.

5. **Tender of Bonds.**—Time was of the essence of the contract as to the delivery of the bonds, and they not having been tendered within six months from October 25, 1892, the date of the confirmation of the foreclosure sale, plaintiff was not bound to receive them.

APPEAL from Harris.   Tried below before Hon. S. H. BRASHEAR.

*Baker, Botts, Baker & Lovett*, for appellant.—1.   The purchaser of the property and franchises of a railroad corporation at foreclosure sale takes the same free of all liability for its former indebtedness not secured by prior liens; and a claim against the sold out company, reduced to judgment and secured by a lien recognized and foreclosed in the decree of foreclosure, and to satisfy which the sale was made, and which was directed to be paid out of the proceeds of such sale, ceases to be a charge upon the property, and can not be enforced against the purchaser of the property or his assigns.   Rev. Stats., art. 4260; Railway v. Newell, 73 Texas, 334; Acres v. Moyne, 59 Texas, 623; Railway v. Shirley, 54 Texas, 125.

2.   The sale of property upon foreclosure of mortgages thereon, under terms prescribed in the decree of foreclosure, and on stipulated conditions to be complied with by the purchaser, and subject to confirmation by the court after compliance with all the terms of the sale by the purchaser, is not completed until the sale is confirmed and all the conditions upon which the sale is to be made are complied with by the purchaser.   Rorer on Jud. Sales, secs. 122, 124, 134; Dan. Chan. Plead. and Prac., 4 ed., pp. 1274, 1281; Williamson v. Berry, 8 How., 495, 546; Berry v. Hardin, 2 B. Mon. (Ky.), 407, 411; Forman v. Hunt, 3 Dana, 622; Campbell v. Johnson, 4 Dana, 186.

*W. P. Hamblen*, for appellee.—Under the facts of this case, the defendant, the Houston East and West Texas Railway Company, ratified the act and contract of E. S. Jemison with the several creditors of said company, dated May 26, 1890, and was in duty bound to perform the same according to its terms, and failing in that, must pay the amount of the judgment in this cause, and the property of said company in its hands is subject to such payment.   McArthur v. Printing Co., 5 Am. and Eng. Ry. and Corp. Cases, 743; Battelle v. Paving Co., 37 Minn., 89; 21 Neb., 621; 10 N. Y., 550; 81 N. Y., 468; 79 Pa. St., 54; 40 Md., 395; Negley v. Lindsey, 67 Pa. St., 217; Wherry v. Wyman, 101 U. S., 392; 8 Wheat., 363.

Upon question of Jemison's liability: Carmody v. Powers, 60 Mich., 26; Doubleday v. Muskett, 7 Bing., 110.

WILLIAMS, ASSOCIATE JUSTICE.—This action was brought by appellee against appellant, as now organized, and against H. W. Downey and James Appleby, receivers of the Houston East and West Texas Railway Company, as formerly constituted, and E. S. Jemison, to recover the amounts due on three judgments, one in favor of appellee, and the others in favor of other parties and assigned to appellee, and against the old corporation.

The petition, with the exhibits attached, showed that the Houston East and West Texas Railway Company was, by the District Court of

Harris County, placed in the hands of a receiver, in 1885, and all of its franchises and property were taken into the custody of the court, through such receiver; that, pending the receivership, the judgments sued on were rendered by that court, upon interventions filed in the receivership suit, declaring statutory liens on all of the franchises and property of the company to secure the amounts so adjudged, and giving them preference over all liens, except others of the same class; that thereafter a judgment was rendered by the court in that cause, foreclosing all liens on the property of the company, and ordering it sold to pay the debts of the company; that the sale was made; that the property was bought by Jemison, and his bid, for all of such property except lands, was assigned to the Union Trust Company, of New York; that such sale to Jemison and assignment to the trust company were reported to and confirmed by the court, the terms of sale complied with by that company, and deed made to it in accordance with the decree of the court; and that, a reorganization of the corporation having been effected by Jemison and his associates, under the purchase, the trust company conveyed to the reorganized company all of such property, except the lands which were retained by Jemison. It was further alleged, that all of the defendants knew that the judgments sued on were unpaid and were charges on the property sold.

It was claimed in the petition that the defendant company was by these facts shown to be liable for the unpaid judgments against the corporation as it formerly was. No acts of Jemison, or of any of his assignees, were shown whereby this indebtedness was assumed, except the fact that they bought with knowledge of it.

All of the defendants excepted generally and specially to the petition, on the ground that it showed no liability on their part for the debts asserted. The exceptions of Jemison and the receivers were sustained, and they were discharged. The demurrers of the railway company were overruled, and, on hearing, judgment was rendered against it, fixing a lien upon the property so purchased, and ordering it sold to pay the debt.

We are of the opinion that the petition showed no cause of action, and that the exceptions should have been sustained.

According to the petition, the sale was made for the purpose of satisfying the claims asserted by appellant as well as others by the enforcement of the lien by which the debts were secured. When the sale was made the lien was discharged, and the right of the lienholders thereafter was to have satisfaction out of the fund thus created. The petition does not state that the purchase money was not paid in, nor does it show any other facts by which either Jemison or his assignees became liable to him for his claim.

From the facts stated, the legal conclusion is, that the property passed to the purchaser, freed from all charges upon it to satisfy which the sale was made. Railway v. Newell, 73 Texas, 334; Acres v. Moyne, 59 Texas, 623; Railway v. Shirley, 54 Texas, 125.

Certain facts, which appear in the evidence and to which we will presently advert, and which are relied upon by appellee to sustain the judgment, were not stated in the petition; nor were they sufficiently disclosed by the answer to supply the defects in the plaintiff's pleadings. The judgment must therefore be reversed, because no cause of action appears from the pleadings.

The assignments of error embrace a proposition that no liability was shown by the evidence, and in view of another trial, it is thought proper to pass upon certain features presented by the facts.

It appears, that pending the receivership and before the entry of the decree of foreclosure, Jemison, representing a movement inaugurated for the reorganization of the company, and acting for those who were interested in such organization, made with a number of creditors, including the owners of the judgment sued on, the following contract:

"The undersigned creditors of the Houston East and West Texas Railway Company hereby agree, one with the other, and with E. S. Jemison, of the city and State of New York, to accept for their several claims, principal and interest, first mortgage bonds of said Houston East and West Texas Railway Company, to be hereafter issued by said company, organized by the purchasers of said railway, at foreclosure sale, at the rate of not exceeding $20,000 per mile, at their face value, that is to say, one bond for each $1000 of said claims, and for fractional portions of said claims, certificates entitling the holders thereof to said first mortgage bonds, when presented in amounts aggregating $1000, said certificates bearing interest at the rate of 5 per cent per annum from date of issue, said bonds to be payable forty years after date, and to bear interest at the rate of 5 per cent per annum from date, interest payable semi-annually, and to be for $1000 each. To this end we hereby assign our respective claims to T. W. House, to be held by him in trust to be delivered to said E. S. Jemison, or his assigns, in exchange for said bonds to be issued as aforesaid. The claims held by us are judgments against said Houston East & West Texas Railway Company, rendered by the District Court of Harris County, for the respective amounts and at the respective dates set opposite our names, said judgments having been given priority of payment in the final decree rendered by the District Court of Harris County in the case of Jacob Binz et al. v. said railway company et al., on the 19th day of November, 1889, as modified by the decree of the Supreme Court of Texas, made on the 29th day of March, 1890. This agreement is made upon the condition that such bonds are to be delivered to us in exchange, as aforesaid, within three months after the foreclosure sale under the final decree, or as soon thereafter as practicable, not to exceed the period of six months from the date of said foreclosure sale. If this agreement shall not have been assented to by the holders of claims in an amount satisfactory to said Jemison prior to the date of said foreclosure sale, then the same to be null and void. This agree-

ment is one of several similar in all respects, and each paper shall have the same force and effect as if all were one instrument.

"Witness our hands, this 26th day of May, 1890."

The decree of foreclosure was subsequently obtained in carrying out the plan for reorganization. In it there was a provision that the lands belonging to the company should not be sold for less than $100,-000, and the other property, franchises, etc., should not be sold for less than $1,200,000, and that, of this last sum, at least $375,000 should be paid by the purchaser in cash, to cover claims, such as those here asserted, having precedence over the lien of the mortgage securing the bonds. It was provided, however, that receipted preference claims should be received by the commissioner as representing so much of the sum thus required to be paid in cash. It was also shown, that in complying with the terms of sale, Jemison and the Union Trust Company used the judgments in question as owned by them, and secured thereby a reduction of the amount to be paid in cash. In other words, so much of the purchase money as would have satisfied these judgments was not in fact paid. The property was purchased by Jemison on the 2nd day of August, 1892, and the sale was confirmed on the 25th day of October, 1892.

The terms of sale were not, however, at once complied with, but on the 19th day of November, 1892, the court, upon motion of the purchaser, granted "a short additional time for the purchaser to comply," etc.; and on the 20th day of February, 1893, the court entered another order, extending the time until the next term of the court, reciting; "that the delay in complying with the terms of his purchase by said E. S. Jemison has been brought about wholly unexpectedly to him, and without apparent fault on his part, and that he has partially complied with the terms of his contract."

On the 26th day of April, 1893, the commissioner reported that Jemison had complied, etc., stating the use made of the judgments as above stated, and that they were taken "as payment and satisfaction of his (Jemison's) debt, and as part compliance with the terms of sale."

On the 5th day of May, 1893, the court approved such report and ordered deed to be made to the Union Trust Company, as Jemison's assignee, of all the property sold (except lands which were ordered to be conveyed to Jemison), free from all charges and incumbrances, except current obligations of the receivers.

The commissioner accordingly made the deed to the trust company, May 6, 1893; and that company, on May 8, 1893, conveyed the property to the reorganized defendant corporation.

Soon thereafter, bonds of the defendant company, such as were stipulated for in the contract above set out, were duly issued, and on the —— day of June, 1893, a sufficient number of them to satisfy the judgments were deposited with T. W. House for appellee, and were

tendered to him, and the tender was repeated at the trial, and was rejected, on the ground that it was not made in time.

It sufficiently appears that those who reorganized the corporation were represented by Jemison, and that his acts were done for their benefit. It further appears that the corporation, as reorganized, has taken the property under the arrangement made by him, and has received the benefits of it, and we think it is chargeable with any liability assumed by Jemison in his dealings with the plaintiff's judgments.

Having asserted ownership of these judgments, and secured credit upon the purchase money for their amounts, the defendant is, we think, bound to account to plaintiff for them. As the result of the transactions, the property was obtained without payment of so much of the purchase money, and the fund from which plaintiff was entitled to satisfaction was retained out of court and is held by defendant. His right to recover it would seem plain, unless, by his contract, he is bound to accept the bonds. 2 Beach on Priv. Corp., sec. 796, et seq., and authorities cited. A majority of the court is of the opinion that the tender of the bonds was not made within the time stipulated. By the contract, the bonds were to be delivered within six months after the sale. The imperative terms used make the time of the essence of the contract, and a compliance therewith a condition of plaintiff's obligation to accept the bonds. The sale contemplated was completed, when confirmed by the court, on the 28th day of October, 1892. The title did not pass, it is true, and the arrangements were not consummated, so that bonds could be issued, until the purchaser had complied with terms of sale. But after confirmation all else depended on the action of the purchaser, who was the other party to this contract. The six months was the time stipulated in which he was to arrange all preliminaries necessary to enable him to comply, and his own delay can not be charged to plaintiff. The plaintiff is not therefore bound to receive the bonds, unless by some other action he has waived the breach by defendant of the contract, or estopped himself from asserting it.

*Reversed and remanded.*

Delivered November 15, 1894.